UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 MAY 23 PM 3: 05

BY _____
CLERK

DEPUTY CLERK

RONALD E. BATES and SUE A. BATES,      )
                                        )
        Plaintiffs,                     )
                                        )
            v.                          )      Case No. 2:23-cv-00279
                                        )
TOWN OF CAVENDISH, VERMONT,             )
                                        )
        Defendant.                      )

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS**
(Doc. 3)

Plaintiffs Ronald E. Bates ("R. Bates") and Sue A. Bates ("S. Bates") bring this action against Defendant Town of Cavendish, Vermont, (the "Town"), alleging the following causes of action related to R. Bates's physical injury at the Cavendish Transfer Station (the "Transfer Station") and subsequent prohibition from entering Town property: negligence (Count 1); battery (Count 2); negligent hiring (Count 3); negligent training (Count 4); negligent supervision (Count 5); loss of consortium (Count 6); freedom to enter traditional public fora (Count 7); freedom of speech, voting, and assembly (Count 8); right to receive due process to challenge the prohibition upon entering in or upon Town property (Count 9); fundamental right to access public fora (Count 10); right to be free from discrimination (Count 11); and right not to be deprived of a common benefit (Count 12).

After removing this case to the District of Vermont on August 9, 2023, based on federal question jurisdiction, (Doc. 1), the Town moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6) on August 17, 2023, for failure to state a claim. (Doc. 3.) Plaintiffs responded in opposition on August 31, 2023, (Doc. 8),[1] and the Town replied on September 14, 2023. (Doc. 9.)

---

[1] The District of Vermont's Local Rules impose a twenty-five-page limit for a memorandum

Thereafter, on January 18, 2024, the court requested supplemental briefing regarding the Town's liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiffs submitted a supplemental memorandum on February 7, 2024, (Doc. 14), and the Town filed supplemental briefing on February 8, 2024, (Doc. 15), at which point the court took this motion under advisement.

Plaintiffs are represented by Stephen S. Ankuda, Esq. Defendant is represented by Kevin L. Kite, Esq.

## I.   Allegations in the Complaint.

Ronald Bates was born on October 30, 1951, and allegedly suffers from impaired hearing, poor memory, and hip deficiencies. He claims that, although he needs bifocals and hearing aids, he cannot afford the latter. Sue Bates is his longtime spouse and "provides care for him[,]" in addition to her role caring for elderly patients full-time at a nearby nursing home. (Doc. 5 at 8, ¶ 39.) For more than thirty years, R. and S. Bates have lived in the Town of Cavendish, a municipality in Windsor County, Vermont, during which time they have allegedly paid property taxes, voted in local elections, and "engag[ed] in public discourse regarding the actions and inactions of government officials, from municipal mismanagement and budgeting, through state and federal elections." *Id.* at 1, ¶ 3.

At least weekly, R. Bates brought recycling and household waste to the Town-owned Transfer Station. The Transfer Station is staffed by Town employees and volunteers, is open typically on Wednesdays, Saturdays, and Sundays, except for holidays, and charges a fee for some waste disposal. Plaintiffs allege that apart from the annual town meeting, the Transfer Station is "the one place . . . where citizens assemble" to "discuss current events, sign and circulate petitions for elective offices, seek[] redress on governmental issues," give political opinions, "learn about other political issues," and

---

opposing a dispositive motion unless leave is granted to exceed the page limit prior to filing. *See* L.R. 7(a)(4)(A). Plaintiffs did not obtain leave from the court for their 30-page memorandum in opposition to the Town's motion to dismiss. The court excuses this violation of the Local Rules but will require compliance for future filings.

connect with neighbors and friends. *Id.* at 2, ¶ 6. They claim that "not only in Cavendish, but in most rural towns, the waste transfer stations are frequently the location of [electoral] campaigns[.]" *Id.* ¶ 7.

"On or about July 15, 2020, at approximately 4:00 p.m.," R. Bates was allegedly at the Transfer Station "to dispose of some waste[,]" *id.* at 3, ¶ 9, when he "approached" John Pisciotta, a Town-employed Transfer Station attendant, "with some questions." *Id.* Because of his difficulty hearing, R. Bates climbed approximately four steps with "clearly observable mobility issues, hearing deficits, and memory issues[]" to where Mr. Pisciotta was located. *Id.* at 5, ¶ 20. Mr. Pisciotta allegedly "made some comment to [R.] Bates, which was not understood[,]" and "[a]s [R.] Bates turned to leave to go down the steps, he was pushed down, falling approximately four steps, landing on his knees and elbows, hitting his head, suffering immediate lateral knee pain, right wrist pain, head lacerations and injury to his eye." (Doc. 5 at 3, ¶ 9.) An ambulance took R. Bates to the hospital for treatment of his injuries, which he claims were caused by "[t]he push by the [Town] employee [Mr. Pisciotta,]" *id.*, who "intentionally contacted [R.] Bates which resulted in [R.] Bates falling and suffering immediate and permanent injury." *Id.* at 6, ¶ 24. He required further treatment thereafter.

R. Bates asserts that many individuals who visit the Transfer Station have disabilities, and Mr. Pisciotta failed "to reasonably control his actions, and act rationally, and carefully[]" in consideration of people with disabilities. *Id.* at 7, ¶ 36. He claims that the Town "failed to inquire of references of Mr. Pisciotta[]" or conduct interviews to confirm he "had the disposition" to interact with "the many types of individuals" who visit the Transfer Station. *Id.* at 6, ¶ 28.

Shortly after his alleged injury, R. Bates complained to the then-Municipal Manager about "the treatment he suffered at the . . . Transfer Station at the hands of Town employees." *Id.* at 3, ¶ 10. On or about July 30, 2020, R. Bates received a "NOTICE AGAINST TRESPASS" via certified mail that was signed by the Municipal Manager (the "Town Manager"), which stated:

THIS LETTER AGAINST TRESPASS SERVES AS OFFICIAL NOTICE
THAT YOU ARE HEREBY PROHIBITED FROM ENTERING UPON
OR IN ANY LAND, OR STRUCTURE OF PROPERTY BEING OWNED
OR UNDER THE DIRECT CARE AND CONTROL OF: Town of
Cavendish - Including but not limited to, (Transfer Station, Town Office,
Highway Garage) . . . ANY TRESSPASSING IN VIOLATION OF THIS
NOTICE IS A CRIME AND MAY SUBJECT YOU TO CRIMINAL
PENALTIES PURSUANT TO TITLE 13 VSA 3705.

(Doc. 5-1) (the "Trespass Notice").

The Trespass Notice does not set forth reasons for its issuance and does not
provide ways in which it may be contested. R. Bates contends that "there has never been
a policy adopted by the Town . . . establishing procedures for issuing, challenging or
tracking trespass notices issued for public property[,]" (Doc. 5 at 10, ¶ 51), nor a
"procedure for recipients of trespass notices for public property to challenge that notice."
*Id.* ¶ 52. He alleges he knows of "no other individual in the Town . . . [who] has received
such a notice[,]" *id.* at 9, ¶ 45, and that "[o]ther individuals who converse with and
complain[] to the Town Manager or Town employees are not denied access to all
Town . . . property." *Id.* at 14, ¶ 81.

Plaintiffs allege that R. Bates may have received the Trespass Notice "to protect
the Town['s] . . . financial interest in avoiding [R.] Bates'[s] claims for personal injury
damages[,]" *id.* at 13, ¶ 70, and note "[a]ny interest the Town . . . may have in protecting
Town employees from alleged harassment does not justify banning [R.] Bates from all
public property." *Id.* ¶ 73. Alternatively, they claim the Town's decision "was driven by
ill will and reckless disregard of [R.] Bate[s]'s rights[.]" (Doc. 5 at 14, ¶ 82.)

Since the incident, R. Bates allegedly "continue[s] to suffer pain, medical
treatment, medical bills, permanent disability, [and] hip and knee replacement surgery[.]"
*Id.* at 4, ¶ 12. He claims that he has "refrained from assembling with his neighbors and
friends at Town property[,]" "participat[ing] in the free exchange of ideas, and free
speech," "joining in petitions for redress against the government," "voting in person with
his fellow citizens at town offices" and "at town wide elections," and that the Town has
"created a significant barrier to . . . exercising his right to vote[.]" *Id.* at 4, 10, ¶¶ 12, 54.

As a result, he states that he "has suffered substantial anguish and inconvenience by being isolated from his long-established friendships and acquaintances[]" and "continues to suffer from the fear of future reprisal in the event he does appear on" Town property. *Id.* at 10, ¶ 54. Because of this prohibition, S. Bates allegedly "has had to suffer the additional burden of undertaking household chores which traditionally [R.] Bates performed[.]" *Id.* at 11, ¶ 55.

R. Bates seeks compensatory damages for his alleged personal and constitutional injuries; S. Bates seeks compensation for her "consortium-type damages[;]" and Plaintiffs seek reasonable attorney's fees and costs. *Id.* at 15.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

Federal pleading standards apply to a complaint after removal to federal court. *See* Fed. R. Civ. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); *DeMarle v. Videk, Inc.*, 2023 WL 4138880, at *3 (W.D.N.Y. June 20, 2023) (noting that "despite [p]laintiff's contention that the complaint was originally filed in Vermont state court where the pleading standard is much lower[,] . . . the federal standards . . . apply now that the matter has been removed to federal court") (citation and internal quotation marks omitted).

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The sufficiency of a complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This

second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.*

The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court . . . is required to accept as true the facts alleged in the complaint, consider those facts in the light most favorable to the plaintiff, and determine whether the complaint sets forth a plausible basis for relief." *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015).

## B.    Whether Plaintiffs' *Monell* Claims Against the Town Should Be Dismissed.

In Counts 7 through 11, Plaintiffs contend that the Town violated R. Bates's constitutional rights under the First and Fourteenth Amendments and is therefore liable under 42 U.S.C. § 1983. Section 1983 is "not itself a source of substantive rights[,]" but rather a vehicle "for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal quotation marks omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)) (internal quotation marks omitted).

Under *Monell*, a municipality may be liable under § 1983 "if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). A plaintiff need not "bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985) (citation omitted). A *Monell* claim may, however, be more limited than other constitutional claims

under § 1983.

"The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir. 2023) (internal quotation marks omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 694; *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (plurality opinion) (emphasis in original) (footnote omitted). Stated differently, a municipality is "responsible only for [its] own illegal acts[,]" and is "not vicariously liable under § 1983 for [its] employees' actions." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018) (citations, emphasis, and internal quotation marks omitted); *see also Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.") (citations omitted).

Accepting Plaintiffs' allegations as true, the Town does not have a policy of issuing Trespass Notices without explaining the grounds for them because R. Bates knows of no other Town resident who has received a trespass notice. The Town claims that, without an explicit municipal policy or widespread practice regarding trespass notices, Plaintiffs have no claim for relief because the Complaint "expressly [pled] away an essential element" of a *Monell* claim. (Doc. 15 at 5.) However, the Town may also be

liable under *Monell* for "a single decision by municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480.

For single-decision actions, "the plaintiff must show that the official had final policymaking power[]" and "the challenged actions [were] within that official's area of policymaking authority." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008). "The Supreme Court has explained that a single official can create *Monell* liability only if state law provides that official with authority to set final, municipality-wide policy in the relevant area." *Agosto*, 982 F.3d at 91; *cf. Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy[.]").

"Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority[.]" *Pembaur*, 475 U.S. at 483. However, "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* at 481-82. Instead,

> [w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (emphasis in original). "[W]hether an official had final policymaking authority is a question of state law." *Pembaur*, 475 U.S. at 483.

Vermont law establishes that the Town's town manager is appointed by its five-person selectboard. *See* 24 V.S.A. § 109-22 ("The Town of Cavendish shall continue to have five Selectboard members[.]"); 24 V.S.A. § 109-23 ("[T]he Town of Cavendish shall take advantage of the provisions of 24 V.S.A. chapter 37, and the Selectboard shall

continue with the appointed Town Manager system of government."). The selectboard "shall have the general supervision of the affairs of the town and shall cause to be performed all duties required of towns and town school districts not committed by law to the care of any particular officer." 24 V.S.A § 872; *see Kirchner v. Giebink*, 552 A.2d 372, 374 (Vt. 1988) ("[A]bsent some specific statutory limitation on their authority, the selectmen have the general supervisory power over town matters.").

"In all matters [the town manager] shall be subject to the direction and supervision and shall hold office at the will of such selectboard, who, by majority vote, may remove him or her at any time for cause." 24 V.S.A. § 1233. A town manager nonetheless retains and conducts "general supervision of the affairs of the town, [is] the administrative head of all departments of the town government, and shall be responsible for the efficient administration thereof." 24 V.S.A. § 1235. More specifically, a town manager has statutory duties that include the following:

> (2) **To perform all duties now conferred by law upon the selectboard,** except that he or she shall not prepare tax bills, sign orders on the general fund of the town, call special or annual town meetings, lay out highways, establish and lay out public parks, make assessments, award damages, act as member of the board of civil authority, nor make appointments to fill vacancies which the selectboard is now authorized by law to fill; but he or she shall, in all matters herein excepted, render the selectboard such assistance as it shall require.
> . . .
> (4) **To have charge and supervision of all public town buildings and repairs thereon, and all building undertaken by the town, unless otherwise provided for by the selectboard, shall be done under his or her charge and supervision.**

24 V.S.A. § 1236 (emphasis supplied).

The Town disputes that its town manager has final policymaking authority and contends the role is simply one of "administrative convenience[]" that "reliev[es] the selectboard of the need to vote on minor decisions." (Doc. 15 at 10.) It claims that "the property at issue is owned and possessed by the [Town], and that property is governed in the first instance by the Cavendish Selectboard." *Id.* at 11. Because there is no allegation

that the selectboard knew of the Trespass Notice much less ratified it, the Town argues that there can be no municipal liability.

At the pleading stage, Plaintiffs have plausibly alleged that, in issuing the Trespass Notice, the Town Manager had "general supervision of the affairs of the town," 24 V.S.A. § 1235, and the authority to "perform all duties now conferred by law upon the selectboard[.]" 24 V.S.A. § 1236(2). In addition, because the Town Manager has "charge and supervision of all public town buildings[,]" 24 V.S.A. § 1236, issuing a Trespass Notice banning R. Bates from Town property appears to have been "within [his] area of policymaking authority." *Roe*, 542 F.3d at 37. In the light most favorable to Plaintiffs, a reasonable inference is that the Town Manager believed he had the authority to issue the Trespass Notice as the single and final policymaker for the Town on this issue, acted pursuant to that authority, and neither sought nor obtained selectboard approval or ratification. Correspondingly, there is also a reasonable inference that the Town Manager's decision was not "constrained by policies not of [his] making[.]" *Praprotnik*, 485 U.S. at 127; *see Liverman v. City of Petersburg*, 844 F.3d 400, 413 (4th Cir. 2016) ("An entity has 'final' authority to set this sort of policy when no further action is needed for the policy to take effect. . . . [T]he fact that [a chief of police] serves 'under the direction and control of the city manager' does not necessarily establish that he lacked final authority to promulgate the policy[.]") (citing *Pembaur*, 475 U.S. at 483).

Based on the foregoing, the Town may be subject to § 1983 liability under *Monell*. *See Hunter v. Town of Mocksville*, 897 F.3d 538, 561 (4th Cir. 2018) ("Because the Town Board 'delegated its power to establish final employment policy to the Town Manager, the Town Manager's decisions . . . represent Town policy and could give rise to municipal liability.'") (alterations adopted) (internal quotation marks omitted) (citing *Pembaur*, 475 U.S. at 483 n.12). At the pleading stage, dismissal of Plaintiffs' *Monell* claim is not warranted. The court therefore DENIES the Town's request to dismiss this claim.

**C.      Whether Plaintiffs May Challenge the Constitutionality of the Trespass Notice.**

The Town claims that "notices that issue pursuant to [a criminal trespass statute] do not, *by themselves*, implicate constitutional concerns[]" based on the rationales set forth in two unpublished Vermont Supreme Court decisions. (Doc. 3 at 14) (emphasis in original).[2] Plaintiffs characterize this authority as not controlling and inapposite because the cases concerned the *delivery* of trespass notices rather than their *contents*.

In *Maarawi v. Parenteau*, 2001 WL 36140136 (Vt. Dec. 2001) (unpublished), the Vermont Supreme Court considered a plaintiff's claim against thirty-one named defendants for "wrongfully issuing a notice against trespass" for their lands based on "improper reasons" as well as a failure to list all of defendants' property. 2001 WL 36140136, at *1. In that case, the court explained:

> The notice against trespass at issue in this case has no legal significance beyond acting as a necessary predicate to a criminal prosecution for trespass. Even where a notice against trespass has issued, however, conviction for trespass still requires a showing that the alleged offender did not have consent or other legal authority to enter or remain on the premises. Therefore, even if [the plaintiff] were able to prove that defendants issued the notice against trespass for a discriminatory, malicious or other bad purpose, the notice itself is not an actionable wrong for which legal relief is available regardless of whether or not the notice listed all of defendants' property.

*Id.* (citations and footnote omitted).

Three years later in *Morse v. Sprague*, 2004 WL 5583289 (Vt. 2004) (unpublished), the Vermont Supreme Court considered a town constable's service of five trespass notices for businesses, a home, and an office. It held that "[p]roviding written notice to a person that the person is not permitted to enter a particular piece of property is not an actionable wrong for which damages may be sought. Rather, the notice is a necessary prerequisite to a charge of criminal trespass under 13 V.S.A. § 3705(a)." *Id.* at

---

[2] According to the Vermont Supreme Court Rules, "[a]n unpublished decision by a three-justice panel may be cited as persuasive authority but is not controlling precedent[.]" V.R.A.P. 33.1(d)(1).

*1.

The Vermont Supreme Court has cited *Maarawi* in concluding that a trespass notice is "not technically an order[]" but rather "informs the recipient that a subsequent violation may be a basis for criminal prosecution." *Baird v. City of Burlington*, 2016 VT 6, ¶ 2 n.1, 201 Vt. 112, 114 n.1, 136 A.3d 223, 225 n.1 (analyzing a municipal trespass ordinance enforced through trespass notices); *see also Nolen v. U.S. Postal Serv.*, 2013 WL 660153, at *10 (D. Vt. Feb. 22, 2013) (stating that "a notice against trespass is a necessary predicate for a charge of unlawful trespass").[3]

Whether a trespass notice provides a basis for a civil action does not foreclose a constitutional challenge to its contents where the issuing property owner is the government and where the trespass notice purports to ban an individual from all public property for any purpose and for eternity. The Second Circuit recognized such a notice violates the Constitution in *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005). There, it remanded, with instructions to enter summary judgment in favor of a plaintiff who alleged a First Amendment claim in response to a trespass notice banning him from public courthouses and their surrounding areas. In doing so, the Second Circuit recognized, "[b]ecause a principal purpose of traditional public fora is the free exchange of ideas, speakers can be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Huminski*, 396 F.3d at 89 (quoting *Cornelius v. NAACP Legal Def.*

---

[3] *See also McCain v. United States*, 2017 WL 589117, at *4 (D. Vt. Feb. 14, 2017) (holding that "[plaintiff] has no valid cause of action against [a municipal police officer] for delivering, at the request of a [restaurant] employee, a notice of trespass" explaining that he must "stay away from [the restaurant] for a year") (internal quotation marks omitted); *Nolen v. Aldrich Pub. Library*, 2013 WL 3967924, at *5 (D. Vt. July 31, 2013) (dismissing plaintiff's First Amendment claim that a law enforcement officer "allegedly violat[ed] [his] right to freedom of speech when [the officer] delivered the notice of trespass to [plaintiff's] home" that banned him from the public library). *Pease v. Windsor Development Review Board*, cited by the Town, did not concern a trespass notice but rather a trial court order. 2011 VT 103, ¶ 29, 190 Vt. 639, 646, 35 A.3d 1019, 1028 ("This order did not prevent plaintiff from discussing the case, from sending letters to defendants about his concerns, from publishing his grievances in the newspaper, or any other form of protected speech.").

*& Educ. Fund*, 473 U.S. 788, 800 (1985)) (internal quotation marks omitted).

For the reasons stated above, Vermont's common law governing the legal effect of trespass orders and their delivery does not preclude a First Amendment challenge to the contents of the Trespass Notice under *Huminski*.

### D.     Whether Plaintiffs Plausibly Allege a First Amendment Violation.

In Count 7, Plaintiffs allege that, under the First Amendment and Article 13 of the Vermont Constitution, the Town violated R. Bates's "rights to access public fora" by banning him from entering Town property, and, as a result, he was "excluded and prohibited . . . from participating in First Amendment protected activities." (Doc. 5 at 11, ¶¶ 58-59.) In Count 8, Plaintiffs allege that, under the First Amendment of the U.S. Constitution and Articles 6, 7, 8, 13, and 20 of the Vermont Constitution, the Town violated R. Bates's freedom of speech, voting, and assembly by "so sweepingly barring" him from Town property with an allegedly "overly broad, not narrowly tailored[]" Trespass Notice that served as a form of banishment. *Id.* at 12, ¶¶ 62-63. The Town argues that Plaintiffs' claim is deficient because the Complaint does not include specific instances of R. Bates engaging in nor planning to engage in protected speech. It further argues Plaintiffs have not alleged a public forum.

Article 13 of the Vermont Constitution provides: "the people have a right to freedom of speech[.]" Vt. Const. ch. I, art. 13. The Vermont Supreme Court has "so far declined to extend greater free-speech protection under Article 13 than under the First Amendment and thus engage in a First Amendment analysis, construing Article 13 as coextensive with its federal analogue." *State v. Masic*, 2021 VT 56, ¶ 7, 215 Vt. 235, 240, 261 A.3d 646, 651. Applicable to the states through the Fourteenth Amendment, the First Amendment prohibits laws "abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. Const. amend. I.

"[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the [g]overnment." *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981). For First Amendment restrictions on government

property, courts consider a three-part framework: (1) whether the alleged expressive activity "is speech protected by the First Amendment," (2) "the nature of the forum, because the extent to which the Government may limit access depends on whether the forum is public or nonpublic[,]" and (3) "whether the justifications for exclusion from the relevant forum satisfy the requisite standard." *Cornelius*, 473 U.S. at 797.

### 1.    Whether Plaintiffs Plausibly Allege Protected Speech.

The First Amendment extends "not only to the right to speak, but also to the right to listen and receive information." *Kass v. City of New York*, 864 F.3d 200, 207 (2d Cir. 2017). "[A] major purpose of [the First] Amendment was to protect the free discussion of governmental affairs . . . to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Super. Ct. for Norfolk Cnty.*, 457 U.S. 596, 604 (1982) (citations and internal quotation marks omitted). The interest of voters "'to cast their votes effectively' falls squarely within the ambit of the protection afforded by the First Amendment." *Yang v. Kosinski*, 960 F.3d 119, 130 (2d Cir. 2020) (citing *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)).

With regard to freedom of assembly, individuals have a "right to join together to advocate opinions free from government interference." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 701 (2000). The First Amendment protects groups that "engage[] in 'expressive association[,]'" and "is not reserved for advocacy groups[, b]ut to come within its ambit, a group must engage in some form of expression[.]" *Id.* at 648. The expressive association must be for "political or other goals independently protected by the [F]irst [A]mendment." *Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir. 1988).

Accepting Plaintiffs' factual allegations as true, R. Bates has voted in local elections, and "engag[ed] in public discourse regarding the actions and inactions of government officials[.]" (Doc. 5 at 1, ¶ 3.) He frequents the Transfer Station where Town citizens "discuss current events, sign and circulate petitions for elective offices, seek[] redress on governmental issues," provide political opinions, "learn about other political issues," and connect with neighbors and friends. *Id.* at 2, ¶ 6. This First Amendment "right to . . . receive information" is no less important than the right to provide it. *Kass*,

864 F.3d at 207. The Trespass Notice prevents R. Bates from "participat[ing] in the free exchange of ideas, and free speech," *id.* at 4, ¶ 12, "joining petitions for redress against the government[,]" *id.* at 10, ¶ 54, and "voting in person with his fellow citizens at town offices[.]" *Id.* at 4, ¶ 12. As a result, he plausibly alleges he engaged and seeks to engage in protected speech under the First Amendment.

## 2. Whether Plaintiffs Plausibly Allege a Public Forum.

To be considered a traditional public forum, a location must "time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009) (internal quotation marks omitted) (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). The Supreme Court has described "streets and parks" as "quintessential public forums," *Perry Educ. Ass'n*, 460 U.S. at 45, but has cautioned that "[p]ublicly owned or operated property does not become a 'public forum' simply because members of the public are permitted to come and go at will." *United States v. Grace*, 461 U.S. 171, 177 (1983). "The Government, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.* at 178 (citation and internal quotation marks omitted). It "does not create a public forum by inaction." *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679-80 (1992). "The decision to create a public forum must instead be made 'by intentionally opening a nontraditional forum for public discourse.'" *Id.* (citing *Cornelius*, 473 U.S. at 802).

Plaintiffs allege that "[r]ecycling centers and transfer stations along with town halls have long been recognized as traditional public fora[.]" (Doc. 5 at 11, ¶ 57.) The Town disagrees that the Transfer Station is a traditional public forum, but does not address the Town Hall. "[T]he decision as to whether a forum is public usually invokes a factual inquiry[,]" as "it is virtually impossible in most cases to identify a public forum by legal inquiry alone[.]" *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1018 (D.C. Cir.

1988).[4]

At the pleading stage, Plaintiffs have alleged R. Bates's First Amendment activities took place at the Transfer Station and the Town Hall, both of which have at least some characteristics of a public forum as they are allegedly places where the citizenry traditionally gathers to discuss or act on public and governmental affairs. The court must await a factual record before it can determine whether these qualify as public fora. *See Wandering Dago Inc. v. N.Y. State Office of Gen. Servs.*, 992 F. Supp. 2d 102, 123 (N.D.N.Y. 2014) ("It is clear that the forum analysis that the [c]ourt must undertake is a fact intensive analysis. . . . Given the nature of this inquiry and the lack of a developed factual record, the [c]ourt finds that it is premature to classify the forum at this time.").

### 3.   Whether the Trespass Notice is Reasonable.

"Restrictions on expression on government property are generally subject to heightened scrutiny[,]" and "[t]he appropriate level of judicial scrutiny depends on the nature of the forum subject to the regulation." *Make The Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004). "A categorical ban on expressive speech singling out an individual does not even satisfy the lower threshold of reasonableness review" for non-public fora. *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 549 (D. Vt. 2014) (citing *Huminski*, 396 F.3d at 89).

In *Huminski*, the Second Circuit observed that "[a]s distinct from a generally applicable municipal ordinance and like an injunction, the [trespass] notices [at issue] 'carry greater risks of censorship and discriminatory application than do general

---

[4] *See also Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 343 (2d Cir. 2010) (vacating summary judgment and noting that "[e]specially in light of the sparse record before us on this appeal, we will not attempt to conduct [the forum] analysis ourselves[, but i]nstead, we remand to the district court which should undertake a comprehensive public forum analysis"); *Boardley v. U.S. Dep't of Interior*, 615 F.3d 508, 515 (D.C. Cir. 2010) (explaining that the determination of whether all national parks are traditional public fora "is a fact-intensive question which cannot be answered in the absence of evidentiary submissions"); *Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1166 (N.D. Cal. 2019) ("Whether a place is a designated public forum turns on the facts.").

ordinances.'" 396 F.3d at 92 (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 764 (1994)). It explained:

> The Notices Against Trespass in effect prohibit indefinitely any and all expressive activity in which [the plaintiff] might want to engage in and around Rutland state courthouses. These notices are thus pervasive enough to be viewed as creating a "First-Amendment-Free Zone" for [plaintiff] alone in and around the Rutland courts. The defendants' singling out of [plaintiff] for exclusion, thereby permitting all others to engage in similar activity in and around the courts, suggests to [the court] that the trespass notices are not reasonable. Such broad restrictions are generally frowned upon even in nonpublic forums.

*Id.* at 92-93.

Similar to the trespass notices in *Huminski*, the Trespass Notice issued to R. Bates is in force "indefinitely[,]" prohibits "any and all expressive activity" that he could engage in on Town-owned land, and "singl[es] out" R. Bates for exclusion from potentially public fora. *Id.* at 92. Indeed, since it banned him from all Town property rather than just the area in and around a single public building or group of public buildings, it is considerably broader than the trespass notices struck down in *Huminski*. Plaintiffs have thus plausibly pled that the Trespass Notice "constituted an unreasonable restriction on [R. Bates's] expressive activity" in violation of the First Amendment. *Id.* at 93.[5]

Based on the foregoing, the court DENIES the Town's motion to dismiss Plaintiffs' Count 7 and 8 claims under the First Amendment and Article 13 of the Vermont Constitution.

### E.    Whether Plaintiffs Plausibly State a Substantive Due Process Claim.

Count 10 asserts a substantive due process claim pursuant to the Fourteenth

---

[5] Plaintiffs allege in Count 8 that the Trespass Notice is "overly broad, not narrowly tailored[,]" but neither party addresses whether First Amendment overbreadth doctrine applies to a trespass notice, which is not a statute, ordinance, or policy. (Doc. 5 at 12, ¶ 62.) In *Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2005), the court stated that "the exclusion effected by the trespass notices was plainly overbroad in light of its duration, geographical scope, and scope of proceedings covered[.]" *Id.* at 88. That statement, however, was in the context of a right of access to the courts, rather than a traditional overbreadth analysis.

Amendment, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. "The first step in [a] substantive due process analysis is to identify the constitutional right at stake." *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995)). "Next, the plaintiff must demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* (internal quotation marks omitted) (quoting *Southerland v. City of New York*, 680 F.3d 127, 151-52 (2d Cir. 2012)). "The interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Id.* (internal quotation marks omitted).

"Substantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" *Loc. 342, Long Island Pub. Serv. Emps. v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) (citation omitted). Beyond the rights guaranteed by the first eight Amendments, "[t]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Under the doctrine of judicial self-restraint, courts must "exercise the utmost care" when "asked to break new ground in this field." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

In conjunction with the doctrine of judicial restraint, "[i]t is now well established that, 'where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process.'" *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019) (alteration adopted) (quoting *Southerland*, 680 F.3d at 142-43). Because Plaintiffs' protected speech claims fall squarely within the First Amendment, no substantive due process claim lies on that same basis. The court thus DISMISSSES Plaintiffs' substantive due process protected speech claim as duplicative.

Alternatively, Plaintiffs allege R. Bates's "protected liberty interest in traveling through and being present in public fora[,]" (Doc. 5 at 13, ¶ 72), and "[f]undamental [r]ight to [a]ccess [p]ublic [f]ora[,]" *id.* at 13, constitute a basis for a substantive due process claim.[6] The Second Circuit has recognized that "individuals possess a fundamental right to travel within a state[,]" but "the parameters of that right have not been sharply defined by [the] [c]ourt[.]" *Williams v. Town of Greenburgh*, 535 F.3d 71, 75 (2d Cir. 2008); *see also Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) ("The right to intrastate travel, or what we sometimes will refer to as the right to free movement, has been recognized in this Circuit."). The Town's reliance on *Virginia v. Hicks*, 539 U.S. 113 (2003), for a contrary proposition is inapposite. There, the Court upheld a no-trespass policy for a non-resident lacking a "legitimate business or social purpose" to visit a low-income housing development where he had been previously convicted of trespassing and damaging property where there was no claim of constitutionally protected activity. *Id.* at 122 (internal quotation marks omitted).

In contrast, R. Bates alleges a legitimate business, social, and First Amendment purpose for accessing Town property. Because of the Trespass Notice, R. Bates is "effectively banished" from all Town-owned property, which generally includes sidewalks and roadways. Although some courts have found a constitutional violation on the basis of an exclusion from municipal property,[7] other courts have not.[8] At a

---

[6] Plaintiffs argue that "Vermont has *constitutionalized* a right to access and use open public land for hunting and fishing." (Doc. 8 at 15) (emphasis in original). However, Plaintiffs' substantive due process claim is not alleged under Vermont law, nor does it seek to vindicate the right to hunt or fish.

[7] *See, e.g., Kennedy v. City of Cincinnati*, 595 F.3d 327, 338 (6th Cir. 2010) (holding that a ban from municipal recreational property interfered with the plaintiff's liberty interest "to remain in a public place of his choice" and was "reminiscent of a partial banishment") (citations and internal quotation marks omitted).

[8] *See, e.g., Williams v. Town of Greenburgh*, 535 F.3d 71, 75-76 (2d Cir. 2008) (finding that "[plaintiff's] expulsion and temporary exclusion from [a municipal Community] Center did not deprive him of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment"); *Peterson v. City of North St. Paul*, 2021 WL 5235092, at *3 (D. Minn. Nov. 10,

minimum, the Second Circuit has ruled that substantive due process "might prevent [a] Town from burdening [an individual's] ability to drive, walk, or otherwise proceed from his home to [a municipal building,]" although "[i]t is clear that the right [to intrastate travel] protects *movement between places* and has no bearing on *access* to a particular place." *Williams*, 535 F.3d at 75 (emphasis in original).[9] In so ruling, the Second Circuit explained that "it would distort the right to free travel beyond recognition to construe it as providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building." *Id.* at 76 (emphasis in original). Notwithstanding this limitation, because R. Bates is banned from *all* Town property, including sidewalks and roadways,[10] Plaintiffs have plausibly alleged a substantive due process claim based on the right to travel, as he may not access Town sidewalks and roadways for any purpose.

At the pleading state, Plaintiffs plausibly allege the Trespass Notice is so broad that it violates R. Bates's freedom of movement within the Town indefinitely with no apparent justification or limitation. The court therefore DENIES the Town's motion to dismiss Count 10 based on the Trespass Notice's impact on R. Bates's right to travel.

### F.    Whether Plaintiffs Plausibly State a Procedural Due Process Claim.

In Count 9, Plaintiffs allege a procedural due process liberty interest claim against the Town under the Fourteenth Amendment, Article 4 of the Vermont Constitution, and

---

2021) ("The City's one-year ban of [plaintiff] from City Hall did not deprive [him] of a protected liberty interest[.]").

[9] *See also Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 757 (7th Cir. 2012) ("The right to intrastate travel protects the right to move from place to place, not the right to access certain public places."); *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) ("[T]he Constitution protects a right to travel locally through public spaces and roadways.").

[10] Although the Town claims that it does not have "lawful possession" of Town "rights of way[,]" (Doc. 9 at 6) (internal quotation marks omitted), 19 V.S.A. § 714 provides, "[w]hen a highway is laid out or altered, the selectboard may take possession of the land within the surveyed limits[.]" *See also* 19 V.S.A. § 303 ("Town highways shall be under the general supervision and control of the selectmen of the town where the roads are located.").

24 V.S.A. § 901(a).[11] The Town argues Plaintiffs have failed to seek review under Vermont Rule of Civil Procedure 75 and thus cannot bring this claim.

Article 4 of the Vermont Constitution provides that "[e]very person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which one may receive in person, property or character[.]" Vt. Const. ch. I, art. 4. The Vermont Supreme Court has concluded that "Article 4 [is] the equivalent to the federal Due Process Clause." *Quesnel v. Town of Middlebury*, 706 A.2d 436, 439 (Vt. 1997). "In general, [Vermont] cases have treated claims under Article 4 similarly to those made under the U.S. Constitution, and [Vermont courts] have employed the federal standards to evaluate Article 4 claims." *A.B. v. S.U.*, 2023 VT 32, ¶ 10, 298 A.3d 573, 576.

"A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wool v. Off. of Pro. Regul.*, 2020 VT 44, ¶ 20, 212 Vt. 305, 236 A.3d 1250, 1259-60 (internal quotation marks omitted) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).

Plaintiffs allege the Trespass Notice deprived R. Bates of fundamental rights, without any form of due process. *See LaFlamme v. Essex Junction Sch. Dist.*, 750 A.2d 993, 998 (Vt. 2000) ("Certainly, an infringement of First Amendment rights involves

---

[11] 24 V.S.A. § 901(a) states: "Where an action is given to any appointed or elected municipal officer or town school district officer, the action shall be brought in the name of the town in which the officer serves and in the case of a town school district officer in the name of the town school district. If the action is given against such officers, it shall be brought against such town or town school district, as the case may be." *See In re Town Highway No. 20*, 2012 VT 17, ¶ 55 n.7, 191 Vt. 231, 264 n.7, 45 A.3d 54, 75 n.7 ("[B]y statute, [plaintiff] was required to sue the Town for the acts of its officers."); *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (explaining that this state's "prescriptions are consistent with the fact that a § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself").

one's liberty."); *Jones v. Helms*, 452 U.S. 412, 418-19 (1981) ("The right to travel has been described as . . . an aspect of liberty that is protected by the Due Process Clauses of the Fifth and Fourteenth Amendments.") (footnote omitted). They assert the Trespass Notice prevents R. Bates's freedom to loiter for an innocent purpose at Town-owned locations.

> [T]he freedom to loiter for innocent purposes is part of the "liberty" protected by the Due Process Clause of the Fourteenth Amendment. We have expressly identified this "right to remove from one place to another according to inclination" as "an attribute of personal liberty" protected by the Constitution. *Williams v. Fears*, 179 U.S. 270, 274, 21 S.Ct. 128, 45 L.Ed. 186 (1900); *see also Papachristou v. Jacksonville*, 405 U.S. 156, 164, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage" *Kent v. Dulles*, 357 U.S. 116, 126, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958), or the right to move "to whatsoever place one's own inclination may direct" identified in Blackstone's Commentaries. 1 W. Blackstone, Commentaries on the Laws of England 130 (1765).

*City of Chicago v. Morales*, 527 U.S. 41, 53-54 (1999) (footnotes omitted); *see also Ramos*, 353 F.3d at 172, 187 (finding a municipal ordinance prohibiting juveniles' right "to remain, idle, wander, stroll or play in any public place or establishment in the Town during curfew hours[]" "curtail[ed] a constitutional freedom") (internal quotation marks omitted).

"To determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (alteration adopted) (citation and internal quotation marks omitted). "[T]he Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Id.* (citation and internal quotation marks omitted). Although the Trespass Notice was not issued pursuant to state or local procedures, "[t]he acts of high-ranking officials who are 'ultimate decision-makers' and have 'final authority over significant matters,' . . . should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis."

*Id.* (alteration adopted) (citations and internal quotation marks omitted); *see also Cyr*, 60 F. Supp. 3d at 551 ("The notices against trespass were not issued randomly or without authority, but were decisions approved by . . . the chief administrator of the school district.").

The Town asserts that the existence of a Rule 75 hearing constituted "an adequate state remedy[]" satisfying procedural due process. (Doc. 9 at 7.) Vermont Rule of Civil Procedure 75(a) provides:

> Any action or failure or refusal to act by an agency of the state or a political subdivision thereof, including any department, board, commission, or officer, that is not reviewable or appealable under Rule 74 of these rules or Rule 4 or 5 of the Vermont Rules for Environmental Court Proceedings may be reviewed in accordance with this rule if such review is otherwise available by law.

Vt. R. Civ. P. 75.

The Reporter's Notes explain that Rule 75 "provides a simpler review procedure . . . for most reviewable determinations of local governmental bodies." *Id.* It applies "on both the state and local levels to nonstatutory proceedings in the nature of certiorari to review judicial or quasi-judicial determinations as to which no other means of review is adequate and to nonstatutory proceedings in the nature of mandamus or prohibition to prevent an abuse of executive discretion or an excess of jurisdiction where no other remedy is available." *Id.*

The Trespass Notice does not cite Rule 75, nor does it suggest any other method of appeal or review. It also does not provide the reasons for its issuance. *See Taylor v. Rodriguez*, 238 F.3d 188, 193 (2d Cir. 2001) (ruling that "[a] hearing is not 'meaningful' if a [person] is given inadequate information about the basis of the charges against him"); *see also Catron v. City of St. Petersburg*, 658 F.3d 1260, 1267 (11th Cir. 2011) ("The trespass ordinance causes a substantial risk of erroneous deprivation of liberty because it is seemingly easy for the City—through a variety of agents—to issue a trespass warning

and because no procedure is provided for the recipient of a trespass warning to challenge the warning or for the warning to be rescinded.").[12]

Moreover, because procedural due process protects "against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), "the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process." *Rivera-Powell*, 470 F.3d at 465 (citation, footnote, and internal quotation marks omitted). "[I]t is only where the state is effectively 'unable to anticipate and prevent a random deprivation of a liberty interest, [that] post deprivation remedies might satisfy due process.'" *Velez v. Levy*, 401 F.3d 75, 91 (2d Cir. 2005) (second alteration in original) (citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). Although "under certain emergency circumstances, a post-deprivation hearing is all that is required to satisfy due process[,]" *DiBlasio v. Novello*, 344 F.3d 292, 304 (2d Cir. 2003), typically, "post-deprivation remedies do not suffice where the government actor in question is a high ranking official with 'final authority over significant matters[.]'" *Velez*, 401 F.3d at 91 (citing *DiBlasio*, 344 F.3d at 302) (internal quotation marks omitted).

The three-prong *Mathews* test considers:

> (1) [T]he private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used and the probable value of additional or substitute procedural safeguards; and (3) the fiscal and administrative burdens that the additional or substantive procedures entail.

---

[12] The Town's authority is not on point because the cited decisions analyzed New York law under different circumstances. *See Horton v. Westling*, 765 F. App'x 531, 533 (2d Cir. 2019) (holding that "Article 78 [of the New York Civil Practice Law and Rules] proceedings remain adequate for purposes of procedural due process" where the alleged deprivation resulted from the "random, unauthorized acts of a state employee without final decision-making authority") (citation and internal quotation marks omitted); *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001) ("New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action."). In addition, the Town cites Vermont cases addressing Rule 75 that did not consider whether due process was satisfied. *See Napro Dev. Corp. v. Town of Berlin*, 376 A.2d 342, 349 (Vt. 1977) ("Because of our resolution of this appeal on other grounds, we do not reach the procedural due process issues[.]"); *Flinn v. Hartford Town Sch. Dist.*, 2018 Vt. Super. LEXIS 644, *2-3 (Jan. 31, 2018) (denying a motion for an expedited final merits hearing and not reaching the merits of the plaintiff's Rule 75-based claim).

*Furlong v. Shalala*, 238 F.3d 227, 236 (2d Cir. 2001) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)) (citation and internal quotation marks omitted).

"*Mathews* is the test for both when a hearing is required (i.e., pre- or post-deprivation) and what kind of procedure is due. . . . The 'general rule' is that a pre-deprivation hearing is required, but the *Mathews* inquiry 'provides guidance' in determining whether to 'tolerate' an exception to the rule requiring pre-deprivation notice and hearing[.]" *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) (citations and internal quotation marks omitted). Generally, procedural due process "require[s] that deprivation of life, liberty or property by adjudication be *preceded* by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (emphasis supplied).

Pursuant to the first prong of the *Mathews* test, R. Bates plausibly alleges an interest in visiting Town property to vote, engage in expressive First Amendment activities, travel, and use the Transfer Station to dispose of household waste.

With regard to the potential of an erroneous deprivation, the Trespass Notice "w[as] not issued pursuant to any protocol," "did not set out a process for contesting the [ban]," gave R. Bates "no meaningful opportunity to contest" it, and does not provide "any explanation of the basis upon which it was issued." *Cyr*, 60 F. Supp. 3d at 552 (footnote omitted) (finding trespass notices with these characteristics satisfied the second prong of *Mathews v. Eldridge*). "The ease with which trespass warnings may be issued is particularly problematic here because the trespass ordinance provides no procedural means for a warning-recipient to challenge the warning." *Catron*, 658 F.3d at 1268. As the Supreme Court observed in declaring a vagrancy ordinance void for vagueness:

> [w]here, as here, there are no standards governing the exercise of the discretion granted by the ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for "harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure." *Thornhill v. Alabama*, 310 U.S. 88, 97-98, 60 S.Ct. 736, 742, 84 L.Ed. 1093. It results in a regime in which the poor and the unpopular are permitted to "stand on a public sidewalk . . . only at the whim of any

police officer." *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176.

*Papachristou*, 405 U.S. at 170 (second alteration in original). The Trespass Notice issued to R. Bates thus plausibly creates a high risk of erroneous deprivation.

The Town argues that R. Bates's procedural due process claim must fail because he did not ask the Town to lift the Trespass Notice and "there is no indication" that the Town would have enforced it had R. Bates entered Town property. (Doc. 3 at 19.) These allegations are neither contained in the Complaint, nor do they address whether the Town deprived R. Bates of procedural due process. *See Brush v. Old Navy LLC*, 2023 WL 5311434, at *34 (D. Vt. Aug. 17, 2023) ("[Defendant] is incorrect as a matter of law that Plaintiff was free to disregard the No Trespass Order and that Plaintiff had an affirmative obligation to seek [defendant's] consent to enter its store.").

As for the third *Mathews* prong, which examines the governmental interests at stake, Plaintiffs allege that the Town issued the Trespass Notice to "avoid[] [R.] Bates'[s] claims for personal injury damages[,]" (Doc. 5 at 13, ¶ 70), "protect[] Town employees from alleged harassment[,]" *id.* ¶ 73, or was "driven by the ill will and reckless disregard of [R.] Bate[s]'s rights[.]" *Id.* at 14, ¶ 82. Assuming *arguendo* that Plaintiffs' speculations regarding the Town's potential motives are accurate, these grounds are "not so overwhelming, taxing, or immediate that the [Town] did not have time to set out reasons for [its] decision and provide [R. Bates] an opportunity to be heard." *Cyr*, 60 F. Supp. 3d at 552.

Because all three prongs of the *Mathews* test weigh in favor of finding Plaintiffs have plausibly alleged a violation of procedural due process, the Town's motion to dismiss Plaintiffs' Count 9 is DENIED.

**G.     Whether Plaintiffs Plausibly Allege an Equal Protection Violation.**

In Count 11, Plaintiffs claim the Town violated the Equal Protection Clause of the Fourteenth Amendment because the Trespass Notice was not "based upon a legitimate government policy[,]" and "[R.] Bates was singled out for mistreatment due to the Town['s] . . . intention to protect its financial interests against a claim by [R.] Bates for

his personal injuries" in an instance of "intentional and arbitrary discrimination[.]" (Doc. 5 at 14, ¶¶ 76-78.) The Town responds that Plaintiffs have not identified a comparator to R. Bates.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws[.]'" *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). Its "purpose . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citation and internal quotation marks omitted).

Plaintiffs' equal protection argument is not premised on a suspect classification but rather on the alleged discriminatory use of a trespass notice and a "class of one."

> When a plaintiff alleges an equal protection violation (without also alleging discrimination based upon membership in a protected class), the plaintiff must plausibly allege that he or she has been intentionally treated differently from others similarly situated and no rational basis exists for that different treatment. Such a claim, often referred to as a "class of one" equal protection claim, stems from the Equal Protection Clause's requirement that the government treat all similarly situated people alike.

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (citations omitted).

To prevail on a "class of one" claim, a plaintiff must allege "that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564. "[T]he level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." *Hu*, 927 F.3d at 92 (internal quotation marks omitted) (citing *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008)). "[A] plaintiff must establish that he [or she] and a comparator are '*prima facie* identical' by showing that[:]"

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the

differential treatment on the basis of a legitimate government policy; and
(ii) the similarity in circumstances and difference in treatment are sufficient
to exclude the possibility that the defendant acted on the basis of a mistake.

*Id.* (citing *Neilson*, 409 F.3d at 105).

Plaintiffs assert that the Second Circuit also requires "that the offending
governmental action at issue be non-discretionary." *Ruston v. Town Bd. for Town of
Skaneateles*, 610 F.3d 55, 58 n.3 (2d Cir. 2010)) ("The Supreme Court arguably added a
third requirement to 'class of one' claims in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591
(2008)[.]"). However, the Second Circuit has also ruled that "*Engquist* does not bar all
class-of-one claims involving discretionary state action." *Analytical Diagnostic Labs, Inc.
v. Kusel*, 626 F.3d 135, 142 (2d Cir. 2010). In *Hu v. City of New York*, it pointed out that
it "ha[s] not found occasion to extend *Engquist* outside of the employment context." 927
F.3d at 95. In any event, "[t]he government 'has no discretion to violate
the . . . Constitution; its dictates are absolute and imperative.'" *Loumiet v. United States*,
828 F.3d 935, 944 (D.C. Cir. 2016) (internal quotation marks omitted) (citing *Owen v.
City of Independence*, 445 U.S. 622, 649 (1980)).

Plaintiffs allege that "[o]ther individuals who converse with and complain[] to the
Town Manager or Town employees are not denied access to all Town . . . property[,]"
(Doc. 5 at 14, ¶ 81), and argue that "[t]he relevant comparator group . . . is composed of
individuals who were at the Transfer Station and spoke with Town employees, including
the Manager." (Doc. 8 at 28.) Plaintiffs also allege that R. Bates knows of no other person
who has received a similar trespass notice. These claims are sufficient at the pleading
stage to plausibly allege that R. Bates was intentionally treated differently from the prima
facie identical comparator group of other Town residents who visit the Transfer Station
and interact with Town employees. *See Hu*, 927 F.3d at 101 ("[A] plaintiff must specify
at least one instance in which he was treated differently from another similarly
situated.").[13] In addition, Plaintiffs allege there was no rational basis for the Town's

---

[13] *Cf., e.g., Controlled Air, Inc. v. Barr*, 826 F. App'x 121, 124 (2d Cir. 2020) ("[Plaintiff] failed
in its complaint to identify any other company that was treated differently, i.e., a company whose
application was accepted despite identifying an employment date before October 1, 2019.");

issuance of the Trespass Notice, other than non-legitimate reasons such as the Town's alleged ill will or potential concerns regarding a costly legal action.

Because Plaintiffs have plausibly alleged a class-of-one Equal Protection Clause violation, the court DENIES the Town's motion to dismiss Count 11.

**H.      Whether Plaintiffs Plausibly Allege a Claim Under Vermont's Common Benefits Clause.**

In Counts 8 and 12, Plaintiffs allege that the Trespass Notice violated Article 7, the Common Benefits Clause, of the Vermont Constitution. Article 7 provides that "government is . . . instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single person, family, or set of persons, who are a part only of that community[.]" Vt. Const. ch. I, art. 7.

Article 7 is "self-executing" and "guarantees the right of the people to a government that does not favor any one person or family over another." *In re Town Highway No. 20*, 2012 VT 17, ¶¶ 32, 34 191 Vt. 231, 251-52, 45 A.3d 54, 66-67. Functioning "as a restriction of government[,]" "[a]t its core the Common Benefits Clause expressed a vision of government that afforded every Vermonter its benefit and protection and provided no Vermonter particular advantage." *Id.* at ¶¶ 30, 32, 191 Vt. at 250-51, 45 A.3d at 66 (citation and internal quotation marks omitted). Its aim "is to protect the state from favoritism to individuals and to remind citizens of the sense of compact that lies at the heart of constitutional government[.]" *Id.* at ¶ 34, 191 Vt. at 252, 45 A.3d at 67 (citation and internal quotation marks omitted). The Vermont Supreme Court has explained that "[a]s the history of Article 7 suggests, protection of the welfare of the community was central to establishing the egalitarian vision of American

---

*Speer v. City of Norwich*, 2021 WL 1978791, at *9 (D. Conn. May 18, 2021) (failing to find a plausible equal protection violation when "[plaintiff's] only mentions of comparators come in the form of vague, conclusory assertions"); *Green v. Semple*, 2019 WL 2016779, at *7 (D. Conn. May 7, 2019), *aff'd*, 811 F. App'x 706 (2d Cir. 2020) ("In the absence of proof of a true comparator (*i.e.*, an inmate who committed a crime before the 2011 revision and had his RREC applied to his parole eligibility date after July 1, 2013), Plaintiff cannot state a plausible 'class of one' equal protection claim.").

democracy. The concept of government exercising its authority inequitably and without a rational basis or for the emolument of a particular group was anathema to that end." *Id.*

Courts consider three "core elements" in an Article 7 claim:

[1] [A] plaintiff must show the denial of a common benefit. In doing so, the plaintiff must show disparate and arbitrary treatment when compared to others similarly situated. [2] [T]he plaintiff must show that the denial directly favors another particular individual or group. [3] Finally, because [courts] must defer to any reasonable and just basis supporting a discretionary judgment by a governmental decisionmaker, plaintiff must demonstrate not only that that the decision was wholly irrational and arbitrary, but also that it was actuated by personal motives unrelated to the duties of the defendant's official position, such as ill will, vindictiveness, or financial gain.

*Id.* at ¶ 37, 191 Vt. at 254, 45 A.3d at 68 (citation and internal quotation marks omitted).

The final element "require[es] the showing of an entirely unjustified personal motive" and "echoes the standard that federal courts routinely apply in so-called 'class-of-one' equal protection cases." *Id.* at ¶¶ 38-39, 191 Vt. at 254, 45 A.3d at 69 (referencing *Village of Willowbrook*, 528 U.S. at 565) (Breyer, J., concurring)). A plaintiff must therefore plausibly allege that "the discriminatory treatment . . . was not only irrational, but motivated solely by an actual desire to harm [him or her] or by other unjustified personal motives such as self-enrichment or the enrichment of others." *In re Town Highway No. 20*, 2012 VT 17, ¶¶ 38, 54, 191 Vt. at 254, 263, 45 A.3d at 69, 75 (recognizing that "state and federal courts have routinely granted or upheld dismissals of class-of-one equal protections claims where the facts simply failed to show the requisite malicious intent").

Plaintiffs have plausibly alleged the first element of an Article 7 claim because R. Bates was denied the common benefit of access to Town property for First Amendment expressive purposes as well as voting and travel. R. Bates knows of no other person who has been treated similarly. As a result, the Town's issuance of a Trespass Notice to R. Bates favors all other Town residents who may still access Town property.

The Town contends that the *Town Highway* third element of an unjustified personal motive requires a "prolonged pattern of willful and abusive conduct over a

decade[.]" (Doc. 3 at 24.) The Vermont Supreme Court, however, has not restricted Article 7 to those facts but has rather "underscore[d] the unique circumstances that both support th[e] decision and necessarily limit its scope. . . . Absent such egregious misconduct, and clear proof of the exacting elements necessary for relief, towns and local officials have no cause for concern about the myriad decisions made in the normal exercise of authority." *In re Town Highway No. 20*, 2012 VT 17, ¶ 81, 191 Vt. at 274, 45 A.3d at 82-83. In light of R. Bates's claims that he was singled out, that the Trespass Notice's duration and scope are unreasonably broad, and that the Trespass Notice was issued for improper purposes, Plaintiffs have plausibly alleged that its issuance was atypical and "egregious misconduct[.]" *Id.* ¶ 81, 191 Vt. at 274, 45 A.3d at 83. They have thus plausibly alleged an unjustified personal motive as the third and final requirement of an Article 7 claim.[14]

Because Plaintiffs have plausibly alleged an Article 7 violation, the court DENIES the Town's motion to dismiss this claim as set forth in Counts 8 and 12 of the Complaint.

## I.   Whether Plaintiffs Can Bring Claims Under Articles 6, 8, and 20 of the Vermont Constitution.

In Count 8, Plaintiffs bring claims under Articles 6, 8, and 20 of the Vermont Constitution. Article 6 of the Vermont Constitution provides that "all power being originally inherent in and co[n]sequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them." Vt. Const. ch. I, art. 6 (alteration in original). "Article 6 . . . provides no private right of action." *Welch v. Seery*, 411 A.2d 1351, 1352 (Vt. 1980). Accordingly, Plaintiffs cannot bring a claim under Article 6.

Pursuant to Article 8 of the Vermont Constitution, "all elections ought to be free and without corruption, and . . . all voters, having a sufficient, evident, common interest

---

[14] *Cf. Ingleside Equity Grp., LP v. City of St. Albans*, 2014 WL 2118440, at *7 (D. Vt. May 21, 2014) (explaining that the third Article 7 element was unmet because "it is undisputed that the Moratorium [on new water and wastewater allocations outside the City] formed the basis of the refusal, and there is no evidence on the record to suggest that the Moratorium was driven by personal motives").

with, and attachment to the community, have a right to elect officers, and be elected into office, agreeably to the regulations made in this constitution." Vt. Const. ch. I, art. 8. Article 20 states: "[T]he people have a right to assemble together to consult for their common good—to instruct their Representatives—and to apply to the Legislature for redress of grievances, by address, petition or remonstrance." Vt. Const. ch. I, art. 20. The Vermont Supreme Court has not recognized a private right of action under Articles 8[15] and 20.[16] As this court must predict whether it would do so,[17] it predicts it would not because a litigant has a private right of action under Article 13, which is coextensive with the First Amendment. *See State v. Champagne*, 2024 VT 17, ¶ 10 (explaining that the Vermont Supreme Court "do[es] not decide constitutional questions unnecessarily") (citation and internal quotation marks omitted).

The Town's motion to dismiss is thereby GRANTED as to Count 8 to the extent it asserts claims under Articles 6, 8, and 20 of the Vermont Constitution.

---

[15] *See Stone v. Town of Irasburg*, 2014 VT 43, ¶ 59, 196 Vt. 356, 380, 98 A.3d 769, 785 (affirming that "Article 8 'does not create a right to retain the office in derogation of a lawful direction to obtain an increased bond'") (citation omitted); *Trudell v. State*, 2013 VT 18, ¶ 32, 193 Vt. 515, 528, 71 A.3d 1235, 1246 (explaining that plaintiffs "fail to adequately brief" their Article 8 claim that its protections are distinguishable from those afforded by the federal Constitution); *Doria v. Univ. of Vt.*, 589 A.2d 317, 318 (Vt. 1991) (declining to rule on whether Article 8 creates a private right of action because of mootness).

[16] *See Clift v. City of South Burlington*, 2007 VT 3, ¶ 9, 181 Vt. 571, 574, 917 A.2d 483, 486 (declining to find "a constitutional right to a town-meeting vote on petitioned advisory articles"); *Vt. Ass'n of Realtors, Inc. v. State*, 593 A.2d 462, 464 n.1 (Vt. 1991) (refraining from addressing plaintiff's Article 20 claim "because plaintiff has failed to develop the state constitutional issues it raises by explaining how or why article 20 affords greater protection than the First Amendment to the United States Constitution"); *Lace v. Univ. of Vt.*, 303 A.2d 475, 478-79 (Vt. 1973) (stating that "[t]he legal right claimed violated is freedom of association guaranteed in Article 20" but finding that plaintiffs had not adequately "pled or proved" their claim).

[17] *See Runner v. N.Y. Stock Exch., Inc.*, 568 F.3d 383, 386 (2d Cir. 2009) (observing that a federal court's role "is not to adopt innovative theories that may distort established state law. Instead [it] must carefully predict how the state's highest court would resolve the uncertainties that [it has] identified.") (quoting *The Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005)).

**J.**     **Whether the Court Should Dismiss Plaintiffs' Remaining State Law Claims.**

In Counts 1 and 2, Plaintiffs allege state law claims for negligence and battery under a *respondeat superior* theory. Plaintiffs also allege claims for negligent hiring, training, and supervision in Counts 3 through 6 arising out of Mr. Pisciotta's alleged conduct at the Transfer Station. The court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) and is required to apply Vermont law to substantive issues.

Under Vermont law, "[a] principal may, in addition to being found *vicariously* liable for tortious conduct of its agents, be found *directly* liable for damages resulting from negligent supervision of its agents' activities." *Brueckner v. Norwich Univ.*, 730 A.2d 1086, 1093 (Vt. 1999) (emphasis in original). "[A]n employer or master is held vicariously liable for the tortious acts of an employee or servant committed during, or incidental to, the scope of employment." *Kuligoski v. Rapoza*, 2018 VT 14, ¶ 13, 207 Vt. 43, 49, 183 A.3d 1145, 1150 (internal quotation marks omitted) (quoting *Brueckner*, 730 A.2d at 1090).

To establish that an employee's conduct falls within the scope of his or her employment, a plaintiff must demonstrate that the conduct:

> (a) . . . is of the kind the servant is employed to perform; (b) . . . occurs substantially within the authorized time and space limits; (c) . . . is actuated, at least in part, by a purpose to serve the master; and (d) in a case in which force is intentionally used by the servant against another . . . is not unexpectable by the master.

*Doe v. Forrest*, 2004 VT 37, ¶ 15, 176 Vt. 476, 483, 853 A.2d 48, 54 (citation omitted) (alterations in original). "The conduct of an employee falls outside the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* ¶ 15, 176 Vt. at 483, 853 A.2d at 54-55 (citation and internal quotation marks omitted).

In addition to the common law doctrine of *respondeat superior*, claims against municipal employees are governed by 24 V.S.A. § 901a which provides:

When the act or omission of a municipal employee acting within the scope

of employment is alleged to have caused . . . injury to persons . . . the exclusive right of action shall lie against the municipality that employed the employee at the time of the act or omission; and no such action may be maintained against the municipal employee or the estate of the municipal employee.

24 V.S.A. § 901a(b). The municipality "shall waive any defense not available to the municipal employee, including municipal sovereign immunity." 24 V.S.A. § 901a(c). This statute, however, "shall not apply to an act or omission of a municipal employee that was willful, intentional, or outside the scope of the employee's authority." 24 V.S.A. § 901a(e).

For both a *respondeat superior* claim under state law and a claim pursuant to 24 V.S.A. § 901a, Plaintiffs have plausibly alleged that Mr. Pisciotta was acting in the scope of his employment as a Transfer Station attendant during his interaction with R. Bates at the Transfer Station steps. Plaintiffs claim the Town is liable for Mr. Pisciotta's alleged battery of R. Bates. Plaintiffs have not further plausibly alleged that Mr. Pisciotta's alleged intentional pushing of R. Bates also falls within that scope.

Plaintiffs also assert negligent hiring, training, and supervision claims against the Town for failing to ensure Mr. Pisciotta could appropriately interact with Transfer Station visitors, particularly those with disabilities. They claim that R. Bates's injuries resulted from this alleged negligence.

Vermont applies "the longstanding common-law doctrine of municipal immunity[,]" *Civetti v. Turner*, 2020 VT 23, ¶ 7, 212 Vt. 185, 233 A.3d 1056, 1059, which "protects municipalities from tort liability in cases where the municipality fulfills a governmental rather than a proprietary function." *Sobel v. City of Rutland*, 2012 VT 84, ¶ 14, 192 Vt. 538, 543, 60 A.3d 625, 630 (citation and internal quotation marks omitted). "The rationale for this is that municipalities perform governmental responsibilities for the general public as instrumentalities of the state; they conduct proprietary activities only for the benefit of the municipality and its residents." *Lorman v. City of Rutland*, 2018 VT 64, ¶ 9, 207 Vt. 598, 605, 193 A.3d 1174, 1178 (citation and internal quotation marks omitted).

The Vermont Supreme Court has acknowledged that "[t]he line between municipal operations that are proprietary and those that are governmental is not clearly defined. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class." *Town of Stockbridge v. State Highway Bd.*, 216 A.2d 44, 46 (Vt. 1965). At this juncture, it is unclear whether a municipality's administration of a Transfer Station is a governmental or proprietary function. The parties' briefing on this issue is scant to non-existent. Rather than dismiss Plaintiffs' state law claims at the pleading stage, the court will await a factual record. *See Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979) ("Tenuous theories of liability are better assayed in the light of actual facts than in pleader's supposition.").

The Town's motion to dismiss Plaintiffs' battery (Count 2), negligent hiring (Count 3), negligent training (Count 4), and negligent supervision (Count 5) claims is thus DENIED WITHOUT PREJUDICE. Because the court does not dismiss these state law claims, the court also DENIES WITHOUT PREJUDICE the Town's motion to dismiss S. Bates's loss of consortium claim (Count 6). *See Derosia v. Book Press, Inc.*, 531 A.2d 905, 907 (Vt. 1987) ("[A] claim for loss of consortium is a derivative action, is dependent upon the success of the underlying tort claim, and arises on account of the injured employee's physical injury.") (citation and internal quotation marks omitted).

**K.     Whether Plaintiffs' Negligence Claim Should Be Dismissed.**

Under Vermont law, "[c]ommon law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury." *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 6, 197 Vt. 176, 179, 102 A.3d 1101, 1105 (citation and internal quotation marks omitted). "In determining whether a duty exists, [Vermont courts] consider a variety of public policy considerations and relevant factors. It is a question of fairness that depends on, among other factors, the relationship of the parties, the nature of the risk, the public interest at stake, and the foreseeability of the harm." *Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71A, ¶ 26, 212 Vt. 612, 238 A.3d 608, 620 (citation and internal quotation marks omitted).

Plaintiffs allege that R. Bates approached Mr. Pisciotta at the Transfer Station to ask questions. During this interaction, they claim "Mr. Pisciotta was negligent in his efforts to repel or prevent [R.] Bates from approaching him," "based upon [his] previous observations of [R.] Bates, along with [R.] Bates'[s] clearly observable mobility issues, hearing deficits, and memory issues." (Doc. 5 at 5, ¶ 20.) Because of this negligence, R. Bates allegedly suffered injuries after being "pushed[]" by Mr. Pisciotta and falling down four steps. *Id.*

"There is no support for the proposition that a defendant can be negligent for failing to anticipate and prevent *his own* intentional conduct." *Espinet v. Horvath*, 657 A.2d 168, 169 (Vt. 1993) (emphasis in original) (explaining that "[p]laintiff's argument would allow a negligence theory in every intentional tort situation, the negligence being defendant's failure to avoid the circumstances that enabled him to commit the intentional tort"). Because Plaintiffs allege Mr. Pisciotta committed an intentional tort, they fail to state a negligence claim on that same basis. The court therefore GRANTS the Town's motion to dismiss Count 1.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART the Town's motion to dismiss. (Doc. 3.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _23rd_ day of May, 2024.

Christina Reiss, District Judge
United States District Court